UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| LORETTA S., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21-cv-00008-TWP-DML |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner of the ) | |
| Social Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

ENTRY ON JUDICIAL REVIEW

Plaintiff Loretta S.[2] requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "SSA"), denying her application for Supplemental Security Income ("SSI") under the Social Security Act. For the following reasons, the Court **affirms** the decision of the Commissioner.

I. PROCEDURAL BACKGROUND

On March 30, 2018, Loretta S. filed an application for SSI benefits, alleging a disability onset date of March 30, 2018. (Filing No. 16-2 at 16.) Her application was initially denied on June 29, 2018, (Filing No. 16-4 at 2), and upon reconsideration on October 19, 2018, (Filing No. 16-4 at 12). Administrative Law Judge Steven Collins (the "ALJ") conducted a hearing on February 24, 2020, at which Loretta S., represented by counsel, and a vocational expert ("VE")

---

[1] After the removal of Andrew M. Saul as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

[2] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

appeared and testified.[3] (Filing No. 16-2 at 32-61.) The ALJ issued a decision on April 27, 2020, concluding that Loretta S. was not entitled to benefits. (Filing No. 16-2 at 13-24.) The Appeals Council denied review on November 12, 2020. (Filing No. 16-2 at 2.) On January 13, 2021, Loretta S. timely filed this civil action, asking the Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to review the final decision of the Commissioner. (Filing No. 1.)

## II.  STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). At

---

[3] On August 29, 2019, the ALJ went on the record for Loretta S.'s scheduled hearing, but her counsel explained that she was not in attendance because of illness; the ALJ rescheduled the hearing. (Filing No. 16-2 at 64-66).

step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite her mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1)[4]; Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996), 1996 WL 374184). At step four, if the claimant can perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy. *Id*.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for

---

[4] The Code of Federal Regulations contains separate, parallel sections concerning disability insurance benefits and SSI, which are identical in most respects. Cases like *Craft* may reference the section pertaining to only one type of benefits. *See* 539 F.3d at 676 (citing 20 C.F.R. § 404.1545(a)(1) (applicable to disability insurance benefits). Generally, a verbatim section exists establishing the same legal point with the other type of benefit. *See, e.g.*, 20 C.F.R. § 416.945(a)(1) (applicable to SSI). The Court will detail any applicable substantive differences but will not usually reference the parallel section.

the ALJ's decision. *Stephens*, 888 F.3d at 327. For the purpose of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

### III.  FACTUAL BACKGROUND

When Loretta S. filed her application in 2018, she alleged that she could no longer work because of chronic gastroparesis. (Filing No. 16-6 at 6.) She was 38 years old when her alleged disability began. (Filing No. 16-5 at 2.) Loretta S. had earned a GED and a certified nursing assistant license that had expired. (Filing No. 16-6 at 7.) She had worked as a cashier, certified nursing assistant, cook, and shipping laborer. *Id*. The evidence of record is amply set forth in the

parties' briefs, as well as the ALJ's decision and need not be repeated here. Below are the facts relevant to the Court's disposition of this case.

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 416.920(a)(4) and concluded that Loretta S. was not disabled. (Filing No. 16-2 at 24.) At step one, the ALJ found that Loretta S. had not engaged in substantial gainful activity[5] since March 30, 2018, the alleged onset date. (Filing No. 16-2 at 18.) At step two, the ALJ found that Loretta S. had "the following severe impairments: gastroparesis, asthma, polycythemia, depression, anxiety, posttraumatic stress disorder, and bipolar disorder." *Id*. (citation omitted). At step three, the ALJ found that she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id*. After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, but never any climbing of ladders, ropes, or scaffolds. The claimant must avoid even moderate exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation. The claimant must avoid concentrated exposure to extreme heat, extreme cold, and humidity. The claimant must avoid all exposure to dangerous machinery and unprotected heights. The claimant can perform simple routine tasks and make simple work-related decisions. There must be few, if any, workplace changes. The claimant can have superficial, ongoing contact with supervisors and coworkers and only occasional public contact.

(Filing No. 16-2 at 20.) At step four, the ALJ found that Loretta S. did not have any past relevant work to consider. (Filing No. 16-2 at 23.) At step five, the ALJ found considering the VE's testimony and Loretta S.'s age, education, work experience, and RFC that she could have

---

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972(a).

performed other work with jobs existing in significant numbers in the national economy in representative occupations like an inspector, packer, and labeler.  (Filing No. 16-2 at 23-24.)

### IV.     DISCUSSION

Loretta S. makes a single assertion that the ALJ committed reversible error by failing to account for her alleged need for oxygen in her RFC.  (Filing No. 26 at 7-10).  She contends the ALJ did not provide a logical and accurate bridge between the evidence and his relevant conclusion.  *Id*.

At her hearing, Loretta S. testified that she had been put on continuous supplemental oxygen since October 10, 2018.  (Filing No. 16-2 at 45.)  Although she also testified that she was put on oxygen full-time when she missed her hearing because of a reoccurrence of aspirational pneumonia.  (Filing No. 16-2 at 45-46.)  Her hearing was initially scheduled in August 2019.  *See supra* note 3.  The VE testified that if an individual needed to use portable oxygen tanks, some employers would tolerate it, but she considered that "a special accommodation."  (Filing No. 16-2 at 59.)

The ALJ addressed Loretta's use of oxygen:

> The claimant presented to the hearing with an oxygen tank.  She was hospitalized with community acquired pneumonia in late 2017, as verified by chest x-ray.  She was discharged home on 2 liters of oxygen, a course of antibiotics, and the instruction to stop smoking.  At her follow up appointment with her treating provider, she reported she was feeling better and her shortness of breath had improved.  She also reported she had cut back on her smoking and she was again encouraged to stop completely.  She remained on oxygen and she was advised to return in December following an updated chest x-ray.  The imaging showed improvement in terms of pneumonia.  In fact, at this time, she was noted to be "off oxygen."  She denied shortness of breath and reported she was continuing to work on smoking cessation.  She was even found to have good respiratory effort and her lungs were found to be clear and equal to auscultation.  She underwent further chest x-ray imaging in July 2018, which showed scattered pulmonary nodules.  Also, she was seen by her allergist in July 2018, at which time, she was noted to have nonlabored breathing.  She has recently been treated with Levaquin for a possible recurrence of pneumonia in 2019.  At this time, she was found to have reduced

> breath sounds on exam. However, her oxygen level was normal at 99%. She was diagnosed with asthma and she has been treated with inhalant and oral medication. She has not been treated with oxygen since prior to the alleged onset date.

(Filing No. 16-2 at 21.) The ALJ also explained:

> The claimant maintains that she needs constant oxygen usage, but this allegation is inconsistent with the evidence, as discussed above. While she receives treatment for asthma, which includes inhalant medication, most respiratory examinations have been normal with only recent findings of reduced breath sounds. However, even with these findings, she was continued on conservative medication treatment and she has been noted to have normal oxygen levels.

(Filing No. 16-2 at 22.)

On October 25, 2017, Loretta S. was admitted to the hospital because during a treatment visit with an oncologist, Ifeoma Roseline Okeke, M.D., for further evaluation of pulmonary nodules, Dr. Okeke wanted her admitted for hypoxemia with oxygen saturation of 86 percent. (Filing No. 16-7 at 33.) A recent CT scan during an emergency room visit on October 10, 2017, showed "numerous bilateral upper lobe lung nodules. Distribution would favor an inflammatory or infectious process." (Filing No. 16-7 at 33.) She was discharged on October 27, 2017, on nebulizer treatments, inhaled steroids, and home oxygen, 24-hours a day, because exercise oximetry showing significant hypoxia. *Id*. On November 14, 2017, a treating lung and sleep specialist, Amzi Draw, M.D., noted that Loretta S. was on two liters of home oxygen. (Filing No. 16-8 at 154.) But Dr. Draw explained that there was "no need for home O2" because Loretta S. performed a six-minute walking test and her lowest oxygen saturation rate was 91 percent. (Filing No. 16-8 at 155.) On December 11, 2017, Dr. Okeke recorded that Loretta S. was "now off oxygen." (Filing No. 16-8 at 82.) On June 5, 2018, her primary care physician recorded her oxygen saturation rate as 95 percent. (Filing No. 16-9 at 22.) Loretta S. had wheezes and rhonchi audible in both lungs, and she was noted to be in "mild respiratory distress." (Filing No. 16-9 at 23.) Her provider's impressions were that she had a cough and was a smoker. (Filing No. 16-9 at

24.)  On June 26, 2018, Loretta S.'s oxygen saturation was 95 percent.  (Filing No. 16-9 at 14.) She had decreased breath sounds in her bilateral lungs.  (Filing No. 16-9 at 15.)  On August 17, 2018, her oxygen saturation was 95 percent.  (Filing No. 16-9 at 5.)  Loretta S. had decreased breath sound bilaterally.  (Filing No. 16-9 at 6.)  On October 10, 2018, she returned to Dr. Draw and he recorded that "[n]o O2 [was] prescribed."  (Filing No. 16-8 at 139.)  Loretta S. reported shortness of breath, but her oxygen saturation rate was recorded to be "98% on room air," and Dr. Draw explained that a CT scan in July 2018 had shown a "decreased size and number of nodules" in her lungs.  *Id*.  Dr. Draw explained that there was "no need for bronchoscopy," Loretta S. was to take "Symbicort as needed," and he ordered a home sleep study for indications of untreated obstructive sleep apnea.  (Filing No. 16-8 at 140.)  On August 22, 2019, Loretta S.'s primary care provider noted that Loretta she had "[r]ecent treatment with Levaquin with possible pneumonia." (Filing No. 16-9 at 83.)  Her oxygen saturation was 99 percent.  *Id*.  On examination, she had decreased breath sounds bilaterally.  (Filing No. 16-9 at 85.)

Loretta S. argues that the ALJ did not acknowledge all the examinations showing that she had decreased breath sounds on examination.  (Filing No. 26 at 8.)  However, the Seventh Circuit has explained that the ALJ need not "address every single piece of relevant evidence that cuts against his decision," but he cannot ignore a line of evidence supporting a finding of disability. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021).  Here, the ALJ addressed the line of evidence and there is no opinion in the record that decreased breath sounds demonstrate the need for supplemental oxygen.  Dr. Okeke ordered that Loretta S. be hospitalized based on hypoxemia demonstrated by a low oxygen saturation rate of 86 percent, and the treating provider at the hospital justified the prescription of home oxygen based on that same consideration.  A specialist, Dr. Draw, explained that Loretta S. no longer needed oxygen because her lowest oxygen saturation

8

rate was 91 percent during ambulatory testing. There is no evidence in Loretta S.'s medical records that she was ever prescribed oxygen after that point. And the ALJ provided a logical bridge to his conclusion that the use of portable oxygen was not demonstrated by the record because Loretta S.'s oxygen saturation rates remained relatively normal, or at least they did not drop below the point that Dr. Draw had indicated that oxygen was no longer necessary.

Loretta S. asserts that "there do not appear to be records actually documenting [her] more recent hospitalizations or need for ongoing supplemental oxygen use." (Filing No. 26 at 10.) But Loretta S. was represented by counsel during the hearing. A claimant represented by counsel is presumed to have made her best case to the ALJ. *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). Here, the ALJ was entitled to rely on the medical record. Loretta S. argues that it is more plausible that she needed supplemental oxygen than she would perpetrate a "complicated fraud that could produce working specialized medical equipment at the hearing." (Filing No. 26 at 9.) She also argues that her allegations are not contradicted by the evidence. *Id*. Using an analogy to other medical equipment, the Seventh Circuit has explained that even abundant evidence of the use of an assistive device like a cane for ambulation—including during the claimant's presentation at treating visits—does not demonstrate that an assistive device is medically required. *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012). And a treating provider's statement that a claimant "needed" a cane does not demonstrate that the provider was necessarily giving the opinion that one was required rather than merely making an observation. *Id*. The lack of any evidence that Loretta S.'s providers prescribed home oxygen following the point that Dr. Draw said it was no longer necessary—much less there being an explanation of the circumstances that any prescribed oxygen was necessary, *i.e.*, 24-hours a day versus only overnight—is fatal to Loretta S.'s argument on appeal. The burden is on the claimant to demonstrate her functional limitations. *See, e.g.*, *Schmidt*

9

*v. Barnhart*, 395 F.3d 737, 745-46 (7th Cir. 2005) (reference to a possible reoccurrence of her pneumonia does not demonstrate that continuous portable oxygen use was necessary). And the ALJ is required to credit the limitations established through subjective statements only to the extent he finds them credible. *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009). Loretta S. has not demonstrated that the ALJ's relevant conclusion was patently wrong simply because her testimony was corroborated by her appearing at the hearing with portable oxygen equipment. Accordingly, the ALJ's RFC finding is affirmed.

## V.  CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). For the reasons stated above, the Court finds no legal basis to reverse the ALJ's decision. The final decision of the Commissioner is **AFFIRMED**. Loretta S.'s appeal is **DISMISSED**.

**SO ORDERED.**

Date: 9/30/2022

_____
Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Lori M. Craig
KELLER & KELLER
lcraig@2keller.com

Eric Adam Farr
KELLER & KELLER
efarr@2keller.com

Nicholas Thomas Lavella
KELLER & KELLER
nlavella@2keller.com

Matthew Frederick Richter
KELLER & KELLER
mrichter@2keller.com

Lu Han
SOCIAL SECURITY ADMINISTRATION
lu.han@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov